UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN WHITSETT,

    Plaintiff,

v.

GOVERNOR GRETCHEN WHITMER,
MICHIGAN 13TH CONGRESSIONAL
DISTRICT DEMOCRATIC PARTY, and
JONATHAN C. KINLOCH, DENISE THOMAS,
DIAJAH RUFFIN, ANNIE MAE HOLT,
VIRGINIA WILLIAMS, HANK JOHNSON,
STEVEN CHISHOLM, MARY BLACKMON,
REGINA ROSS, JAMES HIGGINS, JR,
QUINCY JONES, TIMOTHY WILLIAMS,
GLORIA KILLEBREW, CHARLOTTE WRIGHT,
LARRY HENNEY, CHRISTIAN LINER, STEVE
WALKER, DEBORAH SCOTT, AND WALTER EPPS,
Individually and in their Official Capacities,

    Defendants.

Case No.
Hon.

---

**THE YATOOMA LAW FIRM, P.C.**
Norman Yatooma (P54746)
Christine L. Constantino, Jr. (P80719)
Attorneys for Plaintiff
45 Speed Way
Pontiac, MI 48341
(248) 639-2000

---

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

PLAINTIFF, KAREN WHITSETT by her undersigned counsel, THE

YATOOMA LAW FIRM, P.C., brings this Complaint against DEFENDANTS,

1

individually and in their official capacities, and in support thereof allege the following upon information and belief:

## NATURE OF THE ACTION

Karen Whitsett dared to live. That is her crime. An elected, African-American, female, Democrat, with Lyme Disease and Diabetes, contracted the 2019/2020 novel coronavirus ("COVID-19"). She survived it. Grateful to be alive, she said thank you to our nation's leader who advocated for the drug that saved her. But because Governor Whitmer, and those who answer to her, do not see Karen Whitsett first as person deserving of life, or as a citizen deserving of liberty and free speech, but rather first and foremost as a Democrat, required to serve at the personal pleasure of our Governor — Karen Whitsett, an elected voice, was punished for using it. Now on the state's stage, as it was on the nation's stage, political devices have become little more than artifices used to carry out the personal agendas of those who wield the punitive power. And so, because Ms. Whitsett, who herself in so many ways personifies the very tenets for which the Democratic Party purports to stand, now unwittingly stands in the way of Governor Whitmer's bid for the Vice Presidential nomination — the Governor has responded by stealing the voice from the minorities who she swore to represent. Indeed, if she cannot keep her own house in order, what value can she reasonably suggest that she brings to Joe Biden's bid for the White House? Once again, demonstrating who's boss, just as the Governor

continues to unilaterally extend the captivity of her constituents, she causes an elected voice for those very constituents to be held captive. And as is often the case in self-indulged political warfare, our Governor paid no mind to the collateral carnage. Just as the Governor removed Ms. Whitsett's seat at her table, she also removed 388,680 meals from the tables of the Detroiters who Ms. Whitsett - and Governor Whitmer - both represent. But our Governor wants little more than an all-expense-paid trip to D.C., so the collateral consequences be damned.

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. § 2201, 42 U.S.C. § § 1983, 1985(1) and (3), 1986, and 1988(b).

2. This Court is vested with original jurisdiction over these federal claims by operation of 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. This Court is vested with supplemental jurisdiction over Plaintiff's state defamation claim by operation of 28 U.S.C. § 1367.

4. This Court is vested with authority to grant the requested declaratory relief by operation of 28 U.S.C. § 2201 and 2202, by Rule 57 of the Federal Rules of Civil Procedure, and by general legal and equitable powers of this Court.

5. This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. § 1988.

6. Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § § 1391(b) and 1391(d) as the events took place within the City of Detroit, located in the County of Wayne, which is located within the jurisdiction of the United States District Court for the Eastern District of Michigan, Southern Division.

**PARTIES**

7. Plaintiff, KAREN WHITSETT (hereinafter referred to as "WHITSETT"), is, and was at all times relevant to this action, a citizen of the United States residing in the City of Detroit, Wayne County, Michigan.

8. Defendant GRETCHEN WHITMER (hereinafter referred to as "GOVERNOR" or "WHITMER"), is, and was at all times relevant to this action, a citizen of the United States residing in the State of Michigan and serving as the duly elected Governor of the State of Michigan.

9. Defendant MICHIGAN 13TH CONGRESSIONAL DISTRICT DEMOCRATIC PARTY (hereinafter referred to as the "PARTY") is a political organization, organized in accordance with IRC § 527, registered within the State of Michigan.

10. Defendant JONATHAN C. KINLOCH (hereinafter referred to as the "KINLOCH") is, and was at all times relevant to this action, a citizen of the United States residing in the State of Michigan and serving as the District Chairman for the PARTY.

11. Defendant DENISE THOMAS (hereinafter referred to as "THOMAS") is, and was at all times relevant to this action, a citizen of the United States residing in the State of Michigan and serving as the Executive Vice Chair for the PARTY.

12. Defendant DIAJAH RUFFIN (hereinafter referred to as "RUFFIN") is, and was at all times relevant to this action, a citizen of the United States residing in the State of Michigan and serving as the Treasurer for the PARTY.

13. Defendant ANNIE MAE HOLT (hereinafter referred to as "HOLT") is, and was at all times relevant to this action, a citizen of the United States residing in the State of Michigan and serving as the Secretary for the PARTY.

14. Defendants VIRGINIA WILLIAMS (hereinafter referred to as "V. WILLIAMS"), HANK JOHNSON (hereinafter referred to as "JOHNSON"), STEVEN CHISHOLM (hereinafter referred to as "CHISHOLM"), MARY BLACKMON (hereinafter referred to as "BLACKMON"), REGINA ROSS (hereinafter referred to as "ROSS"), JAMES HIGGINS, JR. (hereinafter referred to as "HIGGINS"), QUINCY JONES (hereinafter referred to as "JONES"), TIMOTHY WILLIAMS (hereinafter referred to as "WILLIAMS"), GLORIA KILLEBREW (hereinafter referred to as "KILLEBREW"), CHARLOTTE WRIGHT (hereinafter referred to as "WRIGHT"), LARRY HENNEY (hereinafter referred to as "HENNEY"), CHRISTIAN LINER (hereinafter referred to as "LINER"), STEVE WALKER (hereinafter referred to as "WALKER"), DEBORAH

SCOTT (hereinafter referred to as "SCOTT"), and WALTER EPPS (hereinafter referred to as "EPPS"), were at all times relevant to this action, citizens of the United States residing in the State of Michigan and serving as members of the District Committee for the PARTY.

15. The PARTY, KINLOCH, THOMAS, RUFFIN, HOLT, WILLIAMS, JOHNSON, CHISHOLM, BLACKMON, ROSS, JAMES HIGGINS, JR, QUINCY JONES, TIMOTHY WILLIAMS, GLORIA KILLEBREW, CHARLOTTE WRIGHT, LARRY HENNEY, CHRISTIAN LINER, STEVE WALKER, DEBORAH SCOTT, and WALTER EPPS are collectively referred to herein as the "PARTY DEFENDANTS."

## FACTUAL ALLEGATIONS

16. WHITSETT is an African American woman currently serving as a duly elected Representative to the Michigan House of Representatives for the 9th Michigan House District.

17. On or about March 18, 2020, after experiencing symptoms of the 2019/2020 novel coronavirus ("COVID-19"), WHITSETT went to her doctor for treatment, and, on April 6, 2020 WHITSETT tested positive for COVID-19.

18. WHITSETT suffered severe symptoms of COVID-19 which resulted in

6

her receiving a prescription for hydroxychloroquine from her treating physicians, which WHITSETT and her physicians believe improved her symptoms and aided in her recovery.

19. WHITSETT had a difficult time obtaining the medication due in large part to the March 27, 2020 correspondence issued by the Michigan Department of Licensing and Regulatory Affairs ("LARA") to licensed prescribers and dispensers notifying them that LARA "recognizes the growing state and national concern over licensees inappropriately prescribing hydroxychloroquine or chloroquine to themselves, family, friends, and/or coworkers without a legitimate medical purpose." (*See* **Exhibit 1,** LARA's March 27, 2020 Correspondence).

20. WHITSETT is also a diabetic who suffers from chronic Lyme disease. Hydroxychloroquine is also used to treat Lyme disease; however, WHITSETT was unaware of the medication's benefits in treating COVID-19 until the President of the United States, Donald Trump (hereinafter referred to as the "PRESIDENT"), publicly praised the medication.

21. As a result of her treatment, WHITSETT recovered from COVID-19 and her condition significantly improved within hours of receiving the medication.

22. Subsequent to WHITSETT's recovery from COVID-19, she credited the PRESIDENT for advocating for the treatment during his daily corona briefings.

23. WHITSETT specifically praised the PRESIDENT for advocating for the

medication that saved her life, stating: "If President Trump had not talked about this, it wouldn't have been something that would be accessible for anyone to be able to get right now[.] It has a lot to do with the president … bringing it up. He is the only person who has the power to make it a priority." She further publicly praised the President for saving her life and thanked him for doing so.

24. On or around April 6, 2020, in response, the PRESIDENT issued a tweet with a link to a Detroit Free Press article regarding WHITSETT's experience with the medication stating: "Congratulations to State Representative Karen Whitsett of Michigan. So glad you are getting better!"[1]

25. On April 14, 2020, WHITSETT, met with the PRESIDENT and Vice President Mike Pence as part of a group of individuals who had contracted and recovered from COVID-19.

26. At that meeting, WHITSETT, as a survivor of COVID-19, shared her experience with the virus, including her treatment and her experience with the drug hydroxychloroquine, and, further, WHITSETT thanked the PRESIDENT for advocating for the medication that saved her life.

27. In response to WHITSETT's visit, the PRESIDENT issued statements to

---

[1] Donald J. Trump (@realDonaldTrump)

the public such as: "She's a Democratic representative, an African American. She's a great woman, [t]he way she told the story was beautiful."[2]

28. On or around April 19, 2020, in response to WHITSETT's visit with the PRESIDENT, the GOVERNOR sent a text message to WHITSETT condemning her for her statements in support of the PRESIDENT. Specifically, the GOVERNOR informed WHITSETT: "You're entitled to your opinion, I'm just disappointed you'd take your theories public without seeking to get answers first. Take care[.]"

29. Thereafter, on April 25, 2020, on information and belief at the GOVERNOR'S prompting, the PARTY passed a unanimous resolution censuring WHITSETT, stating that they: "admonish, rebuke, and reprimand State Representative KAREN WHITSETT for her actions" and that the censure should act as a future refusal to endorse WHITSETT in future election cycles, barring her from holding any office, committee membership or other position within the PARTY's organization (hereinafter referred to as the "RESOLUTION"). (See **Exhibit 2**, Resolution).

30. The RESOLUTION accuses WHITSETT of participating in "events and efforts on behalf of the "Republican Women's Federation of Michigan" with other Republican operatives to express her gratitude to President of the United States,

---

[2] https://www.usatoday.com/story/news/local/michigan/2020/04/07/trump-praises-detroit-democrat-karen-whitsett/2966482001/

9

Donald John Trump, aligning herself with the flawed and misguided response in place of Michigan's duly elected Democratic leadership and Chief Executive Officer." (*See* Exhibit 2).

31. The RESOLUTION further accuses WHITSETT of repeatedly and publicly praising the PRESIDENT for his "delayed and misguided COVID-19 response efforts in contradiction with the scientifically and action-oriented response from Michigan's duly elected Democratic leadership and Chief Executive Officer endangering the health, safety, and welfare of her constituents, the City of Detroit, and the State of Michigan." (*See* Exhibit 2).

32. The RESOLUTION further provides WHITSETT "breached protocol in separately arranging meetings with and advocating to the President of the United States, Donald Trump and Vice President Michael Richard Pence, in place of Michigan's duly elected Democratic leadership and Chief Executive Officer." (*See* Exhibit 2).

33. The RESOLUTION states that it is to be transmitted to the Michigan Central Committee of the Michigan Democratic Party, Michigan's Democratic Congressional Delegation, Michigan's State House and Democratic leadership, and placed on the website for the PARTY organization. (*See* Exhibit 2).

34. In conclusion, the RESOLUTION: "Resolve[s] that, State Representative

Karen Whitsett (HD-9) shall not hold any office, committee membership, or any other position within the 13th Congressional District, during the 2020-2022 election cycle." (*See* Exhibit 2).

35. Since the issuance of the RESOLUTION, WHITSETT has been ousted by the PARTY and the DEFENDANTS continue to hinder WHITSETT's ability to effectuate her official duties in her official capacity as State Representative for the 9th Michigan House District.

36. Specifically, WHITSETT organized for the delivery of approximately 388,680 meals to be delivered to her constituents in the City of Detroit.

37. Due to WHITSETT's public display of gratitude toward the PRESIDENT, DEFENDANTS conspired to estop WHITSETT by refusing her the use of the Michigan Army National Guard to make the distribution of those meals as was previously arranged.

38. According to the U.S. 2020 Census Bureau, the population of the City of Detroit is comprised of approximately 78.6% African American.[3]

39. As a result of DEFENDANTS' ACTIONS in refusing WHITSETT the assistance of the Michigan Army National Guard, WHITSETT's constituents, which are predominantly African Americans, did not receive the approximate 388,680 meals allocated to them.  On information and belief, the GOVERNOR actively

---

[3] https://www.census.gov/quickfacts/fact/table/detroitcitymichigan,MI/PST045218

participated in preventing WHITSETT from using the Michigan Army National Guard, and/or, neglected or refused to assist in permitting the use of same for the purposes of distributing the meals to WHITSETT's constituents, despite having the ability to do so.

40. In support of DEFENDANTS' actions, KINLOCH issued statements to the media stating: "At the end of the day we have political systems. We have political parties and political parties exist for a reason. They do not belong to themselves, they belong to the members and precinct delegates of the Democratic Party." (*See* **Exhibit 3**).

41. The federal courts are capable of taking prompt and measurably appropriate action to remedy this First Amendment violation because the true purpose of DEFENDANTS' RESOLUTION was to silence Plaintiff's disfavored speech.

### COUNT I—VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT

42. WHITSETT re-alleges all of the preceding paragraphs herein and incorporates them by reference.

43. DEFENDANTS, acting in their official capacities and personally, abridged, and violated WHITSETT's First Amendment right of freedom of speech by chilling WHITSETT's freedom of expression.

44. DEFENDANTS' RESOLUTION, created, adopted, and enforced under

color of state law, deprives WHITSETT of her right to engage in protected speech in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983.

45. By censuring WHITSETT for sharing her experience with COVID-19 and the treatment she received, which saved her life, WHITSETT's rights to freedom of speech and expression, in particular her right to express her own individual experiences and political expressions, were violated.

46. WHITSETT's statements related to her own personal experience with the virus and were not political statements denouncing any scientific or political beliefs held by any other individual or group of individuals.

47. DEFENDANTS' actions were unlawfully and politically motivated by their disagreement with the PRESIDENT and came with a substantial cost to WHITSETT's constitutional rights.

48. The true purpose behind DEFENDANTS' RESOLUTION was to silence WHITSETT and suppress WHITSETT's speech in violation of the Free Speech Clause of the First Amendment.

49. As a direct and proximate result of DEFENDANTS' violation of the Free

Speech Clause of the First Amendment, WHITSETT suffered irreparable harm, including the loss of her constitutional rights, entitling her to declaratory relief and monetary damages.

## COUNT II—DEFAMATION

50. WHITSETT re-alleges all of the preceding paragraphs herein and incorporates them by reference.

51. DEFENDANTS' RESOLUTION defames WHITSETT.

52. Specifically, the RESOLUTION states that WHITSETT "breached protocol in separately arranging meetings with and advocating to the President of the United States, Donald Trump and Vice President Michael Richard Pence, in place of Michigan's duly elected Democratic leadership and Chief Executive Officer." (*See* Exhibit 2).

53. This statement is untrue as WHITSETT made no arrangements in her capacity as democratic leadership and she certainly did not arrange to contract COVID-19. Instead, she quite unfortunately infected with a life-threatening virus and was saved by the medication advocated by the PRESIDENT. As such, the PRESIDENT invited her to celebrate her newfound life and she accepted.

54. DEFENDANTS further disseminated to the public that WHITSETT: "on

multiple occasions misrepresented the needs and priorities of Michigan's duly elected Democratic leadership and CEO to the President, his administration, and the public." These statements are untrue.

55. In addition, DEFENDANTS publicly accused WHITSETT of "endangering the health, safety, and welfare of her constituents, the City of Detroit, and the State of Michigan" by appearing at a meeting with the President of the United States of America to discuss her experience with the COVID-19 virus and subsequent treatment and participating in events and efforts on behalf of the "Republican Women's Federation of Michigan and other Republican operatives[.]" Such statements are untrue and outrageous.

56. DEFENDANTS published the aforementioned defamatory statements about WHITSETT on the PARTY's website and issued copies to the Michigan Democratic Party, Michigan Democratic Congressional Delegation, and to Michigan's State House and Senate Democratic leadership.

57. DEFENDANTS' statements were made with actual malice and full knowledge that these statements were false and misleading or with reckless disregard of whether they were false or not.

58. As a direct and proximate result of the foregoing actions, WHITSETT suffered damages including, but not limited to mental anguish, humiliation, and embarrassment.

## COUNT III - Violation of Equal Protection Clause of the Fourteenth Amendment

59. WHITSETT re-alleges all of the preceding paragraphs herein and incorporates them by reference.

60. The RESOLUTION constitutionally deprives WHITSETT of the equal protection of the law guaranteed under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983 by chilling WHITSETT's freedom of speech and censuring her for speech that DEFENDANTS deem to be unacceptable.

61. DEFENDANTS' RESOLUTION ascertaining WHITSETT's forbidden speech violates WHITSETT's rights for equal protection under the law.

62. As a direct and proximate result of DEFENDANTS' violation of the Equal Protection Clause of the Fourteenth Amendment, WHITSETT suffered irreparable harm, including the loss of her constitutional rights, entitling her to declaratory and relief and monetary damages.

## COUNT IV - Violation of 42 U.S.C. § 1985

63. WHITSETT re-alleges all of the preceding paragraphs herein and incorporates them by reference.

64. DEFENDANTS engaged in a conspiracy for the purpose of depriving WHITSETT, an African American associated with the Democratic party, equal protection of the laws and acted in furtherance of the conspiracy.

65. DEFENDANTS intentionally contrived a scheme to publicly shame,

defame, and humiliate WHITSETT because she was an African American Democrat who expressed personal gratitude to the PRESIDENT.

66. As a direct and proximate result of DEFENDANTS' actions, WHITSETT is prevented from holding "any office, committee membership, or any other position within the 13th Congressional District, during the 2020-2022 election cycle." (*See* Exhibit 2).

67. As a direct and proximate result of DEFENDANTS' actions, WHITSETT has been damaged by the deprivation of her constitution protected right to equal protection under the laws entitling her to damages.

## COUNT V - Violation of 42 U.S.C. § 1986

### (Against Defendant GOVERNOR only)

68. WHITSETT re-alleges all of the preceding paragraphs herein and incorporates them by reference.

69. The GOVERNOR knew that the PARTY DEFENDANTS were engaging in a conspiracy for the purpose of depriving WHITSETT, an African American associated with the Democratic party, equal protection under the law.

70. The GOVERNOR, on information and belief, having both the power to prevent and/or aid in preventing the commission of the conspiracy to defame and deprive WHITSETT of her constitutionally protected rights, neglected and/or refused to do so.

71. As a result of the GOVERNOR's failure to exercise reasonable diligence to prevent the PARTY DEFENDANTS' conspiracy, and on information and belief, at the GOVERNOR's prompting, the GOVERNOR is liable to WHITSETT for the damages associated with the deprivation of her constitutionally protected right to equal protection under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A) Declare that Defendants' restriction on Plaintiff's speech, including the adoption of the Resolution at issue here, violates the First and Fourteenth Amendments to the U.S. Constitution as set forth in this Complaint;

B) Award Plaintiff monetary damages for an amount to be determined at trial;

C) Award Plaintiff her reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and/or

D) To grant such other and further relief as this Court should find equitable, just, and proper.

Date: May 21, 2020                    Respectfully submitted,

                                                  **THE YATOOMA LAW FIRM, P.C.**

                                                  */s/ Norman A. Yatooma*
                                                  Norman Yatooma (P54746)
                                                  45 Speed Way
                                                  Pontiac, MI 48341
                                                  Phone: (248) 639-2000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN WHITSETT                                                          Case No.

      Plaintiff,                                                          Hon.

v.

GOVERNOR GRETCHEN WHITMER,
THE MICHIGAN 13TH CONGRESSIONAL
DISTRICT DEMOCRATIC PARTY, and
JONATHAN C. KINLOCH, DENISE THOMAS,
DIAJAH RUFFIN, ANNIE MAE HOLT,
VIRGINIA WILLIAMS, HANK JOHNSON,
STEVEN CHISHOLM, MARY BLACKMON,
REGINA ROSS, JAMES HIGGINS, JR, QUINCY JONES,
TIMOTHY WILLIAMS, GLORIA KILLEBREW, CHARLOTTE
WRIGHT, LARRY HENNEY, CHRISTIAN LINER, STEVE
WALKER, DEBORAH SCOTT, AND WALTER EPPS,
Individually and in their Official Capacity,

      Defendants.

---

**THE YATOOMA LAW FIRM, P.C.**
Norman A. Yatooma (P54746)
Christine L. Constantino, Jr. (P80719)
Attorneys for Plaintiff
45 Speed Way
Pontiac, MI 48341
(248) 639-2000

---

## JURY DEMAND

Plaintiff, KAREN WHITSETT, by and through her attorneys, THE YATOOMA LAW FIRM, P.C., hereby demands Trial by Jury in this matter.

Date: May 21, 2020	Respectfully submitted,

**THE YATOOMA LAW FIRM, P.C.**

*/s/ Norman A. Yatooma*
Norman Yatooma (P54746)
Attorneys for Plaintiff
45 Speed Way
Pontiac, MI 48341
Phone: (248) 639-2000